ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| EDGARDO DI CRISTINA ACEVEDO<br><br>Parte Recurrente<br><br><br>V.<br><br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2026RA00307 | *Revisión Judicial* procedente del Departamento de Corrección y Rehabilitación, División de Remedios Administrativos<br><br>Remedio Administrativo Núm.: CDO-79-2026<br><br>Sobre: Traslado de Institución |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Salgado Schwarz, Carlos G., juez ponente

## SENTENCIA

En San Juan, Puerto Rico a 30 de junio de 2026.

Comparece ante nos Edgardo Di Cristina Acevedo (en adelante, "Di Cristina Acevedo" o "recurrente") y nos solicita que revoquemos la *Resolución* emitida y notificada el 13 de mayo de 2026, por la División de Remedios Administrativos (en adelante. "DRA") del Departamento de Corrección y Rehabilitación de Puerto Rico (en adelante "DCR"). Mediante el referido dictamen, la DRA confirmó la *Respuesta del Área Concernida / Superintendente* emitida por el Supervisor Técnico de Servicios Socio Penales. En su consecuencia, confirmó el traslado de institución del confinado.

Por los fundamentos que exponemos a continuación, *confirmamos* el dictamen recurrido. Veamos.

**-I-**

El 10 de marzo de 2026[1], Di Cristina Acevedo presentó una *Solicitud de Remedio Administrativo* ante la DRA del DCR.[2] Alegó que desde el 26 de febrero de 2026, se encuentra en un módulo de vivienda e institución penal de seguridad mediana, teniendo clasificación de custodia mínima. Adujo que en la previa institución tenía de 6am a 6pm al aire libre y recreación activa y en la nueva institución no, por lo que solicitó la búsqueda de una alternativa viable a la custodia y tiempo al aire libre.

Evaluada dicha *Solicitud*, el 26 de marzo de 2026, el supervisor técnico de servicios socio penales del Centro de Detención del Oeste (en adelante "supervisor técnico"), envió a la evaluadora de la DRA una *Respuesta del Área Concernida / Superintendente*.[3] En dicho documento expresó que:

> "En respuesta a la inquietud del confinado de epígrafe se le orienta, que lo manifestado por usted en su escrito y luego de la unidad sociopenal del Centro de Detención del Oeste analizara el contenido se determinó no tener injerencia. Ser[í]a propio de enviar las mismas a la Autoridad Nominadora qui[e]n es por Ley y por la Reglamentación vigente quien posee la autoridad en realizar movimientos necesarios o pertinentes de las personas privadas de la libertad entre las instituciones del sistema correccional."

En desacuerdo, el 30 de marzo de 2026, Di Cristina Acevedo presentó una *Solicitud de Reconsideración* ante la DRA.[4] Alegó que la solicitud de remedio no estaba dirigida hacia el supervisor, ya que Di Cristina Acevedo reconocía que no tenía

---

[1] Recibida el 24 de marzo de 2026.
[2] Página 1 del Apéndice 3 en la Entrada Núm. 1 en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).
[3] Página 3 del Apéndice 3 en la Entrada Núm. 1 en el SUMAC TA.
[4] Página 4 del Apéndice 3 en la Entrada Núm. 1 en el SUMAC TA.

jurisdicción, y que el traslado ilegal fue efectuado por la Oficina de Control y Manejo de la Población ("OMP"). Solicitó los derechos y privilegios que le correspondan a su custodia mínima ante la DCR, independientemente quien tenga dicha autoridad.[5]

El 13 de mayo de 2026, la DRA emitió la *Resolución* que hoy nos ocupa. Mediante el referido dictamen, la DRA confirmó la *Respuesta* emitida por el supervisor técnico. Concluyó que el Centro de Detención del Oeste estaba apto para recibir custodia máxima, mediana y mínima. Expresó que el recurrente no está mezclado con custodia mediana, y que se encuentra en un módulo de mínima sentencia. Además, sostuvo que es la Autoridad Nominadora del DCR quien realiza los traslados y que se entiende que los confinados de mínima custodia están bien ya que tienen techo, cancha y todas las facilidades que la Institución ofrece.

Inconforme, el 8 de junio de 2026, la parte recurrente presentó el recurso de epígrafe y señaló los siguientes errores:

> **PRIMER ERROR:** El traslado violent[ó] la custodia mínima del recurrente y la política y procedimiento de clasificación del D.C.R.

> **SEGUNDO ERROR:** La Oficina de Control y Manejo de la Población[,] en adelante (OMP)[,] no sigui[ó] su Reglamento de Traslado.

> **TERCER ERROR:** La [decisión] del Secretario Sr. Francisco Quiñones Rivera se debi[ó] a pol[í]tica partidista y no a la preponderancia de la prueba.

De conformidad con la facultad que nos concede la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Enmdas. Reglamento TA, 2025 TSPR 141, 217 DPR __ (2025),* optamos por

---

[5] El 24 de abril de 2026, el DRA acogió la *Solicitud de Reconsideración* (Página 5 del Apéndice 3 en la Entrada Núm. 1 en el SUMAC TA).

prescindir de la comparecencia de la parte recurrida, para disponer de manera eficiente el asunto. A tales efectos, procedemos a esbozar el marco doctrinal aplicable a la controversia que hoy nos ocupa.

-II-

A. Revisión Judicial de Decisiones Administrativas

En nuestro ordenamiento, la revisión judicial de decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurar que estas desempeñen sus funciones conforme a la ley.[6] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y si son compatibles con la política pública que las origina.[7] Por lo general, el ejercicio de revisión judicial de una decisión administrativa suele ceñirse a tres áreas: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial; y (3) la revisión completa y absoluta de las conclusiones de derecho.[8]

Ahora bien, dentro de este marco, los tribunales apelativos deben concederle gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado que estas tienen en los asuntos que se les han sido encomendados.[9] De esta manera, estas determinaciones son amparadas por una presunción de legalidad y

---

[6] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008).
[7] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[8] *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).
[9] *Rolón Martínez v. Supte. Policía*, *supra*, pág. 35; *Asoc. Fcias. v. Caribe Specialty et al. II.*, *supra*, pág. 940.

corrección, la cual los tribunales deben respetar mientras la parte que las impugna no presente evidencia suficiente para derrotarlas.[10] A la luz de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[11]

Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones, tales como: (1) cuando la decisión no esté basada en evidencia sustancial; (2) cuando la agencia haya errado en la aplicación de la ley; (3) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[12]

Entretanto, la Ley Núm. 38 de 30 de junio de 2017, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (Ley Núm. 38-2017)[13] recoge el alcance de la revisión judicial en su Sección 4.5, al establecer que:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.[14]

Conforme lo dispone la precitada Ley Núm. 38-2017, las conclusiones de derecho son revisables en

---

[10] *Rolón Martínez v. Supte. Policía*, *supra*, pág. 35, citando a *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).
[11] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 892.
[12] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPE*, 172 DPR 254, 264 (2007).
[13] 3 LPRA secs. 9603-9713.
[14] 3 LPRA sec. 9675.

todos sus aspectos.[15] Empero, ello no significa que se podrá descartar libremente las conclusiones e interpretaciones de la agencia para sustituirla por el criterio del tribunal.[16] En ese entonces, el tribunal está llamado a aplicar los criterios anteriores de intervención, especialmente en aquellas situaciones en que no encuentre una base racional que fundamente la actuación administrativa.[17] En virtud de este análisis, cabe recordar que los tribunales solo deben intervenir en las decisiones administrativas cuando concluyan que se ha actuado arbitraria, ilegal o irrazonablemente.[18]

### B. Manual para la Clasificación de los Confinados

El Manual para la Clasificación de los Confinados[19] tiene como propósito establecer un sistema organizado para ingresar, procesar y asignar a los confinados a instituciones y programas de adultos del Departamento de Corrección y Rehabilitación. Así pues, dicho reglamento regula los traslados entre instituciones. En particular, el precitado reglamento dispone que "[l]a Oficina de Manejo de Control de Población tendrá la responsabilidad del traslado y ubicación del confinado a una institución acorde con el nivel de custodia actual del confiando."[20]

En lo pertinente, dicho Reglamento establece, en cuanto a consideración de traslados, que las instituciones pueden "procesar a un confinado

---

[15] *Torres Rivera v. Policía de PR*, *supra*, pág. 627.
[16] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 894.
[17] *Íd.*, pág. 896.
[18] *Rolón Martínez v. Supte. Policía*, supra, pág. 36.
[19] Manual para la Clasificación de los Confinados, Reglamento Núm. 9151 de 22 de enero de 2020.
[20] Sección 8, Inciso IV del Manual para la Clasificación de los Confinados, *supra*.

voluntaria o involuntariamente, de forma rutinaria o de emergencia[…]".[21]

-III-

El recurrente alega que su traslado de institución violentó la custodia mínima en la cual está clasificado. Sostiene que la Oficina de Control y Manejo de la Población no siguió el Reglamento de Traslado y que dicha decisión de traslado se debe a razones político-partidistas por parte del Secretario de Corrección.

En la *Resolución* recurrida, luego de evaluar la solicitud de reconsideración presentada por el recurrente, la DRA determinó confirmar la respuesta emitida por el supervisor técnico de servicios socio penales. En dicha respuesta, el supervisor señala que la unidad sociopenal del Centro de Detención del Oeste no tiene injerencia sobre traslados de confinados. Además, en la mencionada *Resolución*, la DRA concluye que dicho centro de detención está apto para recibir tres niveles de custodia. A saber, custodia máxima, mediana y mínima, e indicó que el recurrente no está mezclado con custodia mediana, sino que se encuentra en un módulo de mínima sentencia.

En este caso, a pesar de no estar a gusto en el centro de detención, la clasificación del recurrente como confinado no fue modificada. Nos encontramos frente a un caso donde el recurrente fue trasladado de una institución a otra de manera involuntaria. No obstante, la *Resolución* fue emitida por la DRA luego de evaluar el asunto ante su consideración. Y

---

[21] Sección 8, Inciso II(c) del Manual para la Clasificación de los Confinados, *supra*.

realizada la evaluación, la DRA entiende que la institución actual ofrece las facilidades apropiadas para los confinados de mínima custodia, como lo es el recurrente.

En cuanto a la alegación de que su traslado se debe a razones político-partidistas por parte del Secretario de Corrección, estas son alegaciones sin fundamento. El recurrente no presentó ninguna prueba para sustentar dicha alegación y además, solo se limitó a hacer dicha expresión, sin más, por lo que no tiene ningún mérito.

Por no encontrar que la decisión de traslado de institución del recurrente se haya realizado de manera arbitraria, ilegal o irrazonable, procede confirmar la *Resolución* recurrida.

**-IV-**

Por los fundamentos que anteceden, confirmamos el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones